UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Cynthia Matthews-Hamad,

    Debtor.
_____/

Cynthia Matthews-Hamad,

    Plaintiff,

vs.

Educational Credit
Management Corporation,

    Defendant.
_____/

Chapter 7
Case No. 02-15746-8W7

Adv. Pro. No. 05-00081

**MEMORANDUM DECISION AND ORDER
DENYING DISCHARGE OF STUDENT LOAN**

Section 523(a)(8) of the Bankruptcy Code provides that a discharge under section 727 does not discharge a debtor from a student loan debt unless excepting such debt from discharge would impose an "undue hardship" on the debtor and the debtor's dependants. This Court is required to follow the Eleventh Circuit's directive and apply the three-prong "undue hardship" test set forth by the Second Circuit in *Brunner v. N.Y. State Higher Education Services Corp.*[1] Because the Debtor in this case failed to prove two

---

[1] 831 F.2d 395, 396 (2d Cir. 1987)

prongs of the test – namely, that she cannot maintain a minimal standard of living if forced to repay the loans and that there are additional circumstances indicating that this state of affairs is likely to persist -- the Court finds that the Debtor is not entitled to an undue hardship discharge of her student loans.

I.   Findings of Facts

Cynthia Matthews-Hamad ("Debtor") filed for bankruptcy on August 13, 2002, to discharge her debts under Chapter 7 of the Bankruptcy Code. As of August 8, 2005, the Debtor owed $60,776.17 in student loan debt. The debt holder, Educational Credit Management Corporation ("ECMC"), is a private nonprofit student loan guaranty, governed by the Higher Education Act at 20 U.S.C. section 1061 et seq., and is the type of entity specified in section 523(a)(8) of the Bankruptcy Code.

On February 22, 2005, the Debtor filed an adversary complaint against ECMC to discharge her student loan debt as an undue hardship under section 523(a)(8). Both parties agree that section 523(a)(8) is the relevant provision for the Debtor's student loans, and the Court conducted a trial on this matter on January 25, 2006.

At the time of the trial, the Debtor was 45 years old and divorced, with a 12-year-old daughter for whom she

received sporadic, if any, child support.[2] Her daughter has a debilitating hip condition, but receives insurance through a statewide insurance program for disabled children. In addition, the Debtor has a 24-year-old daughter and a 4-year-old great-nephew, both of whom live with the Debtor.

The Debtor went to college for several years with the help of her student loans. She graduated in 1998 from the University of South Florida with a master's degree in counseling. Her undergraduate degree, also from the University of South Florida, is in psychology. For more than a decade, she has worked at a Salvation Army shelter as a counselor to battered and abused children. According to her 2004 tax return, she earned an adjusted gross income of $30,445.

The Debtor's financial condition at the time of the trial was hardly enviable. She earned a net income of approximately $2,500 per month[3] and had expenses of about $2,500, excluding her student loan payment. Monthly expenses included $300 for food; $1,075 for mortgage payments; $100 for cell phone, cable and Internet; $242 for

---

[2] The Debtor testified at trial that her ex-husband had not paid the court-ordered, $114-per-week child support in eight months.
[3] The Debtor submitted a "Budget" as an exhibit at trial, which listed her net monthly income at $2,371.44 and her total monthly expenses at

electricity; $275 for transportation; $45 for telephone; $102 for car insurance; $79 for water and garbage; and $135 for medical expenses. The Debtor, who drove a used Saturn with over 135,000 miles, had no car payments. The Debtor's 24-year-old daughter was employed part time, but did not contribute to the household income. The parents of the Debtor's grand-nephew paid for his day care, clothes, and some other expenses.

The Debtor previously repaid her student loans on a sporadic basis, but never allowed her loans to go into default. Records indicate that between September 27, 1999, and August 31, 2004, the Debtor made 16 payments for a total of $1,664.67. The payments were approximately $110 per month under the income sensitive repayment plan offered by the Federal Family Education Loan Program ("FFELP"). Under FFELP, a borrower may only pay under the income sensitive repayment plan for a total of five years. In August 2004, the Debtor's five years under FFELP had run its course, and her student loan payment increased to more than $500 per month.

After the Debtor filed this adversary proceeding, ECMC informed her that she qualified for several consolidation plans through the William D. Ford Direct Loan Program

---

$2,488.44. Based on adjusted gross income of $30,445 in her 2004 tax

4

("Ford Program"), including an income contingent repayment plan ("ICRP"). Under the Ford Program, the monthly payment under ICRP is calculated based upon the borrower's annual gross income and family size. Under ICRP, a borrower's payment is 20 percent of the difference between her gross income and the federal poverty guidelines for his or her family size. C.F.R. § 685.209(a)(2)-(3). If the Debtor consolidates her student loan under ICRP, she would have a payment of between $200 and $300 per month, depending on her family size, unless her income increased. She would be required to make payments for 25 years, but at the end of that period her remaining debt would be discharged. C.F.R. § 685.209(c)(4)(iv). The Debtor looked into the Ford Program, but claimed that it would still cause an undue hardship.

## II. Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. sections 1334 and 157(a). This is a core proceeding under 28 U.S.C. section 157(b)(2)(I).

## III. Conclusions of Law

The Debtor contends that her student loan debt should be discharged as an "undue hardship" under section

---

return, however, net monthly income would be $2,537.

523(a)(8) of the Bankruptcy Code.  Section 523(a)(8) provides as follows:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an education benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants.

11 U.S.C. § 523(a)(8).

The Bankruptcy Code's legislative history clarifies Congress's goal to require all students to fulfill their loan obligations irrespective of their individual circumstances; indeed, Congress would not have specified student loans as excepted from discharge if its intent was to allow bankruptcy courts to override the exception based merely on "garden variety" hardship typically seen in bankruptcy rather than "undue" hardship. *Rifino v. United*

*States (In re Rifino)*, 245 F.3d 1083, 1087 (9th Cir. 2001) (quoting *In re Pena*, 155 F.3d 1108, 1111 (9th Cir. 1998)). Moreover, the language in section 523(a)(8) cannot be reasonably construed to permit a discharge of a student loan debt absent a finding of undue hardship. *Hemar Ins. Corp. of America v. Cox (In re Cox)*, 338 F.3d 1238, 1242 (11th Cir. 2003).

Creditors opposing the discharge of a student loan debt have the initial burden to prove the debt exists and is "an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." *In re Ivory*, 269 B.R. 890, 893 (Bankr. N.D. Ala. 2001). Once the creditor proves the existence and nature of the debt, the burden shifts to the debtor to prove she will incur undue hardship if she must repay the loan. *Id.*

Although a showing of undue hardship is the only means to discharge a student loan, the Bankruptcy Code does not actually define undue hardship. The Eleventh Circuit, however, adopted the Second Circuit's three-part *Brunner* test as a standard for measuring whether a debtor meets the criteria of undue hardship under section 523(a)(8). *See Cox*, 338 F.3d at 1241 (holding that "the *Brunner* test is

the appropriate test for determining 'undue hardship.'"). Under the *Brunner* test, the debtor must establish by a preponderance of the evidence the following:

> (1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependants if forced to repay the loans;
>
> (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396.

In *Cox,* the Eleventh Circuit confirmed that the language of section 523(a)(8) expressly identifies undue hardship as the only way to discharge student loan debt. *See Cox*, 338 F.3d at 1243 (stating that "[b]ecause the specific language of § 523(a)(8) does not allow for relief to a debtor who has failed to show 'undue hardship,' the statute cannot be overruled by the general principles of equity contained in § 105(a). To allow the bankruptcy court, through principles of equity, to grant any more or less than what the clear language of § 523(a)(8) mandates

would be 'tantamount to judicial legislation and is something that should be left to Congress, not the courts.'" (internal citation omitted)). Accordingly, this Court's authority to discharge a student loan is only available when a debtor proves undue hardship and, absent such a showing, the Court's only option is to deny the debtor's request for discharge.

A. *Minimal Standard of Living*

The first prong of the *Brunner* test requires the Debtor to prove that she cannot maintain a minimal standard of living based on her current income and expenses if she is required to make her monthly student loan payments. *Brunner*, 831 F.2d at 396. Although no exact formula exists for ascertaining a "minimal" standard of living, the *Brunner* test considers the debtor's particular circumstances -- such as the debtor's stream of income, obligations, and any available debt-restructuring options. *Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley)*, 300 B.R. 813, 818 (N.D. Fla. 2003). "Courts generally require 'more than temporary financial adversity, but typically stop short of utter hopelessness.'" *In re Mallinckrodt*, 274 B.R. 560, 566 (S.D. Fla. 2002) (quoting *Rifino*, 245 F.3d at 1088.) Under this prong of the *Brunner* test, the debtor is not required to live in poverty, but she is also

not entitled to maintain her previous standard of living. *See Stanley*, 300 B.R. at 817-818 (stating "'[m]inimal' does not mean preexisting, and it does not mean comfortable.").

The Debtor fails to meet the first prong of the *Brunner* test. She has additional sources of income that would allow her to maintain a "minimal" standard of living while making student loan payments. For example, the Debtor received a tax return of $2,240 in 2004, which would provide an extra $185 per month. In addition, the Debtor has a 24-year-old daughter who lives at home and contributes no income for family expenses at this time. A modest contribution from her adult daughter could provide the Debtor additional income or, if her daughter were to move out as the Debtor anticipates, the Debtor's monthly expenses would be reduced. Finally, the Debtor's ex-husband is required to pay more than $400 per month in child support. Although he had not paid any child support in the eight months prior to the trial, it is not unreasonable to expect the Debtor to collect at least some child support in the future.

The bankruptcy court, in determining the first prong of the *Brunner* test, should also consider any available restructuring of student loan debt that would ease the debtor's payment obligations. *Stanley*, 300 B.R. at 818.

The ICRP could reduce the Debtor's payments to 20 percent of her income above the poverty level, which would be approximately $200 to $300 per month - well below the $500 per month the Debtor would pay without the ICRP. Although the increase in monthly payments - about $90 to $190 more than the $110 per month the Debtor paid previously - may not be easy for the Debtor, it would certainly not deny the Debtor and her dependants a minimal standard of living.

B. *Additional Circumstances*

The second prong of the *Brunner* test requires the Debtor to establish "that additional circumstances exist indicating that her state of affairs is likely to persist for a significant portion of the repayment period." *Brunner*, 831 F.2d at 396. The second prong is the heart of the *Brunner* test, *Educ. Credit Mgmt. Corp v. Frushour (In re Frushour)*, 433 F.3d 393, 401 (4th Cir. 2005), and is often difficult to prove because it requires the debtor to show that she will be unable to pay her student loan debt in the future for reasons outside her control. *In re Johnson*, 299 B.R. 676, 680 (Bankr. M.D. Ga. 2003). Although the future is inherently speculative, a debtor must show "present existence of circumstances - circumstances in addition to a present lack of ability to pay - that strongly suggest an inability to pay the loan

over an extended period of time." *Ulm v. Educ. Credit Mgmt. Corp.*, 304 B.R. 915, 921 (S.D. Ga. 2004); *see also U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 92 (5th Cir. 2003) (stating that the debtor must prove "'a total incapacity . . . in the future to pay debts for reasons not within [her] control.'" (internal citations omitted)). Only a debtor with rare circumstances will satisfy this prong of *Brunner*. *Frushour*, 433 F.3d at 401. A debtor might satisfy this prong if she can establish that she is ill, disabled, lacking usable job skills, or responsible for a large number of dependants. *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir. 2005).

This prong recognizes the potential continuing benefit of an education, and requires that the debtor show her grim financial condition is likely to exist for a substantial portion of the repayment period. *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993). Thus, in evaluating whether there is a certainty of hopelessness or merely a temporary dire financial condition, the Court must keep in mind the important policy reasons for ensuring the success of government-sponsored student loan programs. Recognizing the value of education in the pursuit of equal opportunities, "Congress made student loans available to

those who otherwise may not have been able to receive adequate financing of a college education from private lenders." *Id.* at 1136. "If the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow." *Id.* at 1137.

The Debtor asserted that she has such a special circumstance: she is at the top of her profession and is unlikely to find other employment in her field that will pay more than her current position or give her the flexibility she needs to take care of her daughter. The Debtor admitted, however, that she has taken few steps to seek higher-paying employment.

Several courts have found that the fact that a debtor has a low-paying job without much upside earning potential is not enough to satisfy this prong of the *Brunner* test. *See Frushour*, 433 F.3d at 401 (finding that "[h]aving a low-paying job . . . does not in itself provide undue hardship" where debtor was voluntarily employed in her preferred field as decorative painter); *Gerhardt*, 348 F.3d at 92 (stating that "nothing in the Bankruptcy Code suggests that a debtor may choose to work only in the field in which he was trained, obtain a low-paying job, and then claim it would be an undue hardship to repay his student

loans."); *Oyler*, 397 F.3d at 386 (refusing to discharge student loan debt of joint debtors where one debtor chose to work in low-paying job as a church pastor); *In re Grigas*, 252 B.R. 866 (Bankr. D.N.H. 2000) (finding that debtor who sought to confine employment to chosen field with little compensation and few opportunities did not meet *Brunner's* second prong); *see also Mallinckrodt*, 274 B.R. at 568 (stating that "[t]he student loan program does not guarantee that debtors will find financially rewarding employment in the field of their choice.").

Further, as noted above, child support payments, income tax returns, and reduced expenses could provide the Debtor more income in the future to repay student loan debt even if she stays at her current job. In light of the foregoing, the Debtor has not satisfied her burden of showing special circumstances.

C. *Good Faith*

The final prong of the *Brunner* test requires the Debtor to demonstrate that she has made a good faith effort to repay the loan. *Brunner*, 831 F.2d at 396. This prong "recognizes that '[w]ith the receipt of a government-guaranteed education, the student assumes an obligation to make a good faith effort to repay those loans, as measured by his or her efforts to obtain employment, maximize

14

income, and minimize expense.'" *Goulet v. Educ. Credit Mgmt. Corp. (In re Goulet)*, 284 F.3d 773, 779 (7th Cir. 2002) (quoting *Roberson*, 999 F.2d at 1136).

A debtor's effort to seek out options to make the student loan debt less burdensome is an important component of the good-faith inquiry. *Frushour*, 433 F.3d at 402 (citing *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1206 (10th Cir. 2005)). Although not dispositive, it shows that the debtor takes her loan obligations seriously and is trying to repay them despite her unfortunate circumstances. *Id.* (citing *Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 682-683 (6th Cir. 2005)).

The Court finds that the Debtor has made a good-faith effort to repay her student loans. From the time the Debtor graduated in 1998 until August of 2004, she made loan payments to the best of her ability. After the Debtor exhausted her eligibility for the income sensitive repayment plan, she explored other options. In addition, the Debtor has been gainfully employed in the same job for more than a decade, and it is apparent that the Debtor does not spend lavishly.

IV. Conclusion

To discharge a student loan debt under section 523(a)(8), a debtor must prove that excepting such loans from discharge would pose an undue hardship. In determining what constitutes an undue hardship, the Debtor must satisfy all three factors of the *Brunner* test. While the Debtor has shown that she made good-faith efforts to repay the loans, she failed to prove the remaining two prongs of the test. The Debtor did not prove that she cannot maintain a minimal standard of living for herself and her dependants if forced to repay the loans, nor did she show that there are additional circumstances indicating that this state of affairs will persist for much of the repayment period. Accordingly, it is

ORDERED that:

1. Debtor's student loans are excepted from discharge pursuant to section 523(a)(8).

2. A separate final judgment will be entered in favor of the Defendant, ECMC.

DONE AND ORDERED in Tampa, Florida, on November 6, 2007.

Michael G. Williamson
United States Bankruptcy Judge

F:\WORDWILL\CASES\Hamad\Memorandumv2.Doc